## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **EDITH EVANS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No. 20-CV-0670-CVE-SH** |
| | ) |
| **UNITED HEALTHCARE OF OKLAHOMA** | ) |
| **INC., an Oklahoma Corporation,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff filed this action seeking, inter alia, to recover benefits and enforce her rights under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. (ERISA). Specifically, this action arises from United Healthcare of Oklahoma Inc. (UHC) denying benefits as to payment for hospital services that plaintiff received after undergoing a breast reconstruction procedure. Before the Court are plaintiff's opening brief (Dkt. # 61), defendant's response (Dkt. # 70), plaintiff's reply (Dkt. # 71), defendant's counterclaim for attorneys' fees (Dkt. # 37, at 9), and plaintiff's motion to dismiss, strike, or clarify defendant's counterclaim (Dkt. # 40). Plaintiff argues that defendant's denial should be reversed because defendant 1) interpreted the terms of plaintiff's insurance plan unreasonably; 2) did not base its denial on substantial evidence; and 3) "failed to provide [p]laintiff with adequate notice of its denial and failed to provide [p]laintiff with a full and fair review . . . [thereby] violat[ing] ERISA procedural safeguards[.]" Dkt. # 61, at 7. Defendant responds that "its denial of the subject claim was not an abuse of discretion and was the correct, reasonable determination and is supported by substantial evidence." Dkt. # 70, at 7.

**I.**

Plaintiff, Edith Evans, is a 61-year-old woman who battled breast cancer for years–undergoing radiation treatment and several surgical procedures, including a bilateral mastectomy and breast reconstruction surgeries. Dkt. # 61, at 5. Plaintiff is an insured beneficiary under a UHC employee benefit plan (the plan), group policy number 909377, governed by ERISA. Dkt. # 70, at 6. Per the policy, UHC is the "Plan's Claims Fiduciary and has been delegated" discretionary authority to interpret terms of the plan and make eligibility determinations. Dkt. # 49-1, at 174.

On May 11, 2017, prior to her bilateral mastectomy, UHC informed plaintiff in writing that it "reviewed [her] request for Outpatient Facility services . . . and found that the [mastectomy procedures] are eligible for Outpatient Facility coverage." Id. at 177. UHC's written confirmation stated that this eligibility determination was copied to Dr. Thomas Coy and Freeman Health System (Freeman). Id. at 178. Accordingly, on May 19, 2017, Dr. Coy, an in-network physician, performed plaintiff's bilateral mastectomy at Freeman, an in-network facility. Id. at 192, 319. On May 25, 2017, Freeman submitted a claim for reimbursement to UHC for plaintiff's procedures. Id. at 182-90. On June 8, 2017, UHC sent plaintiff an Explanation of Benefits (EOB) statement informing her of Freeman's billed amount, UHC's payment amount, and that plaintiff owed $0. Id. at 197-200. The record also includes UHC's June 13, 2017 "Provider Remittance Advice" (PRA) statement that it sent to Freeman, which contains an itemized list of Freeman's submitted charges, any adjustment amount, and the amount UHC paid. Id. at 205-14. The statement indicates that UHC paid Freeman $4048.50, and plaintiff was subsequently sent an updated EOB statement, on June 22, 2017, reflecting a $4048.50 adjustment. Id. at 215.

According to the administrative record (Dkt. # 49-1), Freeman requested a review and reprocessing of its claim related to plaintiff's May 19, 2017 surgery, and the review request was logged in UHC's "online routing system" (ORS). Id. at 235-39. UHC's date-stamped ORS log includes plaintiff's name and group policy number; date of service; date of appeal; reason for appeal; the name of a Freeman employee contact; the name of the provider; whether the provider was in-network or out-of-network; what was "wrong" with the claim that was denied; when the appeal "record" was opened or assigned to a particular UHC administrator, and so forth. Id. at 235-36.

After plaintiff's 2017 mastectomy, she "required two invasive breast reconstructive surgeries" due to severe tissue damage from cancer treatment. Dkt. # 61, at 5. The first reconstructive surgery, which is the subject of the instant case, was performed on February 14, 2018 by Dr. William Hughes, an in-network physician with an office in Mercy Clinic, at Mercy Hospital-Springfield (Mercy Hospital), an out-of-network facility. Id. at 5, 13. Further, the agreed supplemental administrative record (Dkt. # 57) contains what appears to be a doctor's note, dated January 19, 2018, with plaintiff's name, the date of her first scheduled reconstructive surgery (February 14, 2018), a list of procedures with procedure codes, the words "Springfield," "Main OR,"[1] and "UHC." Dkt. # 57, at 8. Importantly, the doctor's note appears to have a post-it note or stamp affixed to it (hereinafter the insurance verification note). Id. This insurance verification note, dated January 24, 2018, as completed, states: "Insurance Verification"; the name "Susan" under "Contact"; and contains hand-written information, specific to plaintiff's group policy, such as her deductible, out-of-pocket (OOP) maximum, and co-insurance structure, compare Dkt. # 57, at 8,

---

[1]     As used throughout the administrative record and herein, it is assumed that "OR" means operating room.

3

with Dkt. # 49-1, at 27-29, 33.  The handwritten insurance verification note further states "in-net[work] only"; "Mercy & Dr. H[ughes] are in-net[work]"[2]; and "no auth[orization] needed per codes due to Br[east] CA[ncer] D[iagnosis]."  Dkt. # 57, at 8.

On February 14, 2018, plaintiff underwent the breast reconstruction surgery at Mercy Hospital, performed by Dr. Hughes.  Dkt. # 49-1, at 240-43.  Plaintiff recovered at Mercy Hospital, and was discharged on February 15, 2018.  Id. at 253.  On February 20, 2018, Mercy Clinic Springfield submitted a claim for $11,897 for Dr. Hughes's services.  Id. at 240-44.  The claim contained three charges related to surgery, and the procedure codes "19361" and "LT" (left side); "19357" and "RT" (right side); and "19340" and "LT."  Id. at 242.  The procedure codes on Mercy Clinic's February 20, 2018 claim match the procedure codes written on the January 24, 2018 insurance verification note.  Compare Dkt. # 49-1, at 242, with Dkt. # 57, at 8.  On February 23, 2018, UHC sent plaintiff an EOB statement, which included the claim for Dr. Hughes, and the accompanying notes acknowledging Dr. Hughes's in-network status.  Dkt. # 49-1, at 247-48 ("the plan discount shown is your savings for using a network provider").  UHC paid the provider $2,174.17 and, based on her remaining deductible and co-insurance, plaintiff owed $1,054.71 for that claim.  Id.

Mercy Hospital filed a separate claim on February 26, 2018, billing $51,059.68 for hospital services such as room and board, surgical supplies, sterile supplies, and OR services.  Id. at 252-55.  On March 8, 2018, UHC sent plaintiff an EOB statement indicating that UHC did not pay any

---

[2]     The Court notes that it appears, at bottom, there was a miscommunication somewhere between Dr. Hughes's office among Mercy Clinic, Mercy Hospital-Springfield, and UHC–perhaps because some of Mercy Hospital's facilities are in-network and some are out-of-network.

portion of the $51,059.68 Mercy Hospital bill.  Id. at 256-58.  The EOB notes accompanying the

Mercy Hospital benefits denial state:

> Based on the information provided, this service does not meet coverage requirements as defined in your plan. Therefore, no benefits are payable for this expense. In order for this service to be considered for coverage, you or your medical provider must submit either scientific evidence, skilled care information or medical records that demonstrate how this service meets the requirements indicated in your benefit plan language.

Id. at 257-58.

According to the agreed supplemental record (Dkt. # 57), Mercy Hospital submitted a

"Single Claim Reconsideration Request Form" to UHC on behalf of plaintiff, and attached a letter

in support dated March 28, 2018. Dkt. # 57, at 9, 6-7.  On the reconsideration request form, Mercy

Hospital appeals nurse, Sheri Noble, selected "[o]ther" under "[r]eason for request[,]" and stated

"[a]pproved as SOEC,[3] but we billed appropriately as inpatient" and "[s]ee appeal letter[.]" Id. at

9.  In the appeal letter, Ms. Noble states that "[n]o authorization was required, but a reference

number was given: 111691701[.]" Id. at 6.  The letter further states that Mercy Hospital "request[s]

an appeal in response to the denial applied to the hospital services for [plaintiff]." Id.  "The

insurance indicates the denial is for lack of medical necessity for inpatient";[4] however, "[a]

latissimus flap is inpatient and since we notified you that this was inpatient on 2/15/18 and you

---

[3]      It is unclear what SOEC stands for--perhaps an abbreviation related to an outpatient procedure.

[4]      Based on the reconsideration request form (Dkt. # 57, at 9) and the attached appeal letter (Dkt. # 57, at 6-7), it appears that there is not only confusion about whether Mercy Hospital called UHC for precertification, but also confusion as to whether UHC had approved the procedure as outpatient rather than inpatient. Thus, it appears that because of Mercy Hospital's confusion and miscommunication with UHC, the appeal focuses on the medical necessity for plaintiff's inpatient stay rather than whether Mercy Hospital notified UHC in advance about plaintiff undergoing the procedure at its Springfield facility.

never responded to our request, we must assume that this is approved because our agreement with UHC is that if there is a disagreement over the status, that UHC will contact [us]." Id.  Then, in a different sentence, Ms. Noble states: "[w]hen we called for precert[ification] we were told that none was needed because of [plaintiff's] previous breast cancer diagnosis." Id. at 7.

On April 5, 2018, UHC sent Mercy Hospital a letter acknowledging that it "received a letter sent on [Mercy Hospital's] behalf in the UnitedHealthcare Central Escalation Unit. If [Mercy Hospital's] request qualifies for an appeal, grievance, or complaint, [UHC] will complete [its] review and send [Mercy Hospital] a letter about [its] decision[.]" Dkt. # 49-1, at 263.  While the administrative record contains UHC's acknowledgment letter (Dkt. # 49-1, at 263) stating that it received Mercy Hospital's appeal letter, the appeal letter itself is not included in the administrative record that was initially submitted to the Court (Dkt. # 49-1); however, it is included in the agreed supplemental administrative record (Dkt. # 57, at 6-7).  Consequently, on April 20, 2018, UHC informed Mercy Hospital that it "reviewed [Mercy Hospital's] request about the [February 14, 2018] claim for [plaintiff].  Based on [UHC's] review, [it] determined that [UHC] processed the claim accurately. No further payment is due because the claim was processed/paid at the contracted rate." Dkt. # 49-1, at 265.

Mercy Hospital re-submitted its claim to UHC on September 11, 2018, billing $51,011.20 for hospital services.  Id. at 266-67.  Additionally, the administrative record shows that Mercy Hospital re-submitted the claim a third time, for $49,546.59, on September 19, 2018. Id. at 270-74. Unlike the February 26, 2018 (Dkt. # 49-1, at 253) and September 11, 2018 (Dkt. # 49-1, at 267) claims, the September 19, 2018 claim (Dkt. # 49-1, at 271) itemizes "OR services" into three separate line items, with procedure codes "19361" and "LT"; "19340" and "LT"; and ""19357" and

"RT." These procedure codes match the procedure codes written on the January 24, 2018 insurance verification note.  Compare Dkt. # 49-1, at 271, with Dkt. # 57, at 8.

Thereafter, UHC sent plaintiff an EOB statement on September 25, 2018, which includes Mercy Hospital's $49,546.59 bill for hospital services, and again paid nothing for the Mercy Hospital claim.  Dkt. # 49-1, at 275-76.  The EOB notes accompanying UHC's denial of Mercy Hospital's claim state:

> Benefits for this service are denied. Based on a review of the information provided, this service is not covered under your plan. For more details, please refer to the letter that was sent in response to the request for notification/prior authorization. If you disagree with this decision, you or your healthcare provider may submit additional scientific evidence or medical records for further review.

Id. at 277 (emphasis added).   It is unclear what letter the EOB notes are referring to–the administrative record (Dkt. # 49-1) and agreed supplemental record (Dkt. # 57) do not appear to contain a letter that meets this description.

On October 3, 2018, Mercy Hospital submitted a fourth claim to UHC for $49,546.59.  Id. at 281-85.  This claim, like the September 19, 2018 claim (Dkt. # 49-1, at 271), contains three separate line items for OR services, with procedure codes that match the codes written on the January 24, 2018 insurance verification note.  Compare Dkt. # 49-1, at 282, with Dkt. # 57, at 8. On October 5, 2018, UHC sent plaintiff an EOB statement notifying her of UHC's benefits denial of the $49,546.59 Mercy Hospital claim, stating in the notes, "[p]ayment for this service is denied. Benefits are only available when you receive services from a provider in your plan's network." Dkt. # 49-1, at 289.  This is the first time UHC based the denial on the receipt of services from a provider not in the plan's network.

On October 19, 2018, and October 26, 2018, respectively, Mercy Hospital re-submitted the hospital services claim for a fifth and sixth time to UHC for $49,546.59. Id. at 293-302. UHC sent plaintiff an EOB statement on November 2, 2018, again notifying her that it was denying benefits for the $49,546.59 Mercy Hospital claim. Id. at 304. The accompanying EOB notes state: "[p]ayment for this service is denied. Benefits are only available when you receive services from a provider in your plan's network." Id. Consequently, plaintiff received a "revised bill from Mercy dated November 20, 2018, stating [p]laintiff owed $49,346.59 . . . . [And,] [i]n January 2019, Mercy initiated collection efforts against [p]laintiff . . . through the collection agency Receivable Solutions, Inc." Dkt. # 61, at 6.

Finally, the administrative record shows that Mercy Hospital appealed the adverse benefit determination again in April 2020, which UHC denied for untimeliness. Dkt. # 49-1, at 314. Specifically, UHC's denial of appeal letter, dated April 21, 2020, states, in pertinent part, "[y]ou asked us to take another look at our initial decision. We have completed our review and confirmed that the claim was processed correctly. As a result, we are unable to issue any further payment." Id. And, in the next paragraph, under the heading "Why was this decision made?" UHC states: "[t]he health plan requires that reconsiderations are filed within 180 days from the date you received your [EOB statement]. We received your reconsideration after the deadline." Id. However, the administrative record does not contain any letter or other documentation from Mercy Hospital requesting the reconsideration that preceded UHC's April 21, 2020 letter (Dkt. # 49-1, at 314). Notwithstanding, the agreed supplemental record contains UHC's date-stamped ORS history that logged: that "provider sent recon[sideration] request"; who opened and who assigned the record; and states "according to your contract, reconsideration requests/appeals must be submitted within the

timely filing limit. this reconsideration request/appeal was received beyond the timely filing limit. this reconsideration request/appeal was received beyond the . . . deadline, and therefore, will not be considered." Dkt. # 57, at 10.

## II.

Plan beneficiaries, like plaintiff, have the right to federal court review of benefit denials and terminations under ERISA. "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989). Specifically, 29 U.S.C. § 1132(a)(1)(b) grants plaintiff the right "to recover benefits due to [her] under the terms of the plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(b).

While the Court's default standard of review is de novo, when a plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of a plan, as here, a challenge under § 1132(a)(1)(B) is ordinarily reviewed under an arbitrary and capricious standard. See Firestone, 489 U.S. at 115 (applying a deferential standard of review when the plan administrator or fiduciary has discretionary authority to determine eligibility for benefits or to construe the terms of a plan). Under the "pure" version of this standard, a plan administrator's or fiduciary's decision will be upheld "so long as it is predicated on a reasoned basis." Adamson v. Unum Life Ins. Co. of Am., 455 F.3d 1209, 1212 (10th Cir. 2006).

By contrast, "[i]ndicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by a fiduciary." Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1282 (10th Cir. 2002). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision

maker]. Substantial evidence requires more than a scintilla but less than a preponderance." Sandoval v. Aetna Life & Cas. Inc. Co., 967 F.2d 377, 382 (10th Cir. 1992) (internal quotations omitted). A plan administrator's decision is afforded less deference where it "fails to gather or examine relevant evidence." Caldwell, 287 F.3d at 182. In other words, "fiduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory." Gaither v. Aetna Life Ins. Co., 394 F.3d 792, 807 (10th Cir. 2004).

The Tenth Circuit has held that "in reviewing a plan administrator's decision for abuse of discretion, the federal courts are limited to the administrative record–the materials compiled by the administrator in the course of making his decision." Hall v. UNUM Life Ins. Co. of Am., 300 F.3d 1197, 1201 (10th Cir. 2002). "However, [the Supreme Court] left open the issue of what evidence may be considered by a federal court in an action under § 1132(a)(1)(B) when de novo review is required." Id. And, the Tenth Circuit has found that reviewing a benefits denial de novo may be appropriate "where there were procedural irregularities in the administrator's consideration of the benefits claim." LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismem. and Dependent Life Ins. Plan, 605 F.3d 789, 797 (10th Cir. 2010).

Finally, ERISA's "interests are not served by federal court review of an incomplete administrative record. . . . In [circumstances with] procedural irregularit[ies] and [a] resulting incomplete record . . . the appropriate remedy is a remand[.]" Messick v. McKesson Corp., 640 F. App'x 796, 799 (10th Cir. 2016); see also Rekstad v. U.S. Bankcorp, 451 F.3d 1114, 1121 (10th Cir. 2006) (concluding that a remand for further findings or explanations is the proper remedy where a plan administrator's decision was so one-sided that the court was unable to determine the

substantiality of the evidence supporting the benefits determination); Gaither, 394 F.3d at 806 n.5

(finding that merely affording a plan administrator's decision less deference per Caldwell, 287 F.3d

at 1282, is inappropriate where a court is unable to determine the reasonableness of a benefits

determination due to the plan administrator's failure to investigate).

The parties disagree over whether UHC's benefits denial should be reviewed de novo or

under the arbitrary-and-capricious standard.  Plaintiff argues that "[t]he proper standard of review

of [d]efendant's decision is de novo because of [d]efendant's blatant disregard for procedural

safeguards."  Dkt. # 61, at 7.  Defendant responds that "[w]here, as here, an ERISA plan grants

discretionary authority to an insurer, the insurer is entitled to judgment in its favor unless the

[p]laintiff can demonstrate that its decision was an abuse of discretion."[5]  Dkt. # 70, at 13.  For the

reasons stated below, the Court finds that it lacks a complete administrative record to review.  Thus,

the Court cannot determine the appropriate standard of review for UHC's benefits denial, and UHC's

---

[5]     The Court notes that defendant's response to plaintiff's opening brief (Dkt. # 70) is replete
with factual errors, miscitations, and mischaracterizations.  See, e.g., Dkt. # 70, at 9-10
(incorrectly stating that plaintiff's 2017 procedure was performed by Dr. Hughes and that
it was a breast reconstruction procedure), 10 n.25 (citing pages 272-76 of the record for the
proposition that plaintiff's claim was denied because Mercy Hospital is a non-network
facility and UHC had not authorized the service; however, pages 272-76 only stand for the
proposition that UHC paid $0 for plaintiff's Mercy Hospital claim), 15 (stating that as a
result of Mercy Hospital's appeal, "claims for the surgeon, anesthesiologist, laboratory
services, and other Network providers were processed as covered expenses" and citing pages
275-80 of the record in support; however, pages 275-80 are the September 25, 2018 EOB
statement, and the surgical services claim included therein is for Freeman, not Mercy
Hospital, with a date of service of September 18, 2018.  Moreover, plaintiff's February 23,
2018 EOB statement (Dkt. # 49-1, at 245-48) clearly shows that UHC paid Dr. Hughes,
plaintiff's surgeon, before Mercy Hospital even submitted its claim for hospital services on
February 26, 2018, Dkt. # 49-1, at 252-55, and before Mercy Hospital appealed UHC's
denial on March 28, 2018, Dkt. # 57, at 6-7).

decision should be remanded for further findings and explanations consistent with the Court's findings below.

### III.

The administrative record (Dkt. # 49-1) and agreed supplemental record (Dkt. # 57) indicate numerous procedural irregularities and missing documents. Importantly, the Tenth Circuit has found that in circumstances where a plan administrator fails to meet ERISA's minimum claims procedure standards, the Code of Federal Regulations (CFR) provides that "a claimant shall be *deemed to have exhausted the administrative remedies* available under the plan . . . on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of a claim." LaAsmar, 605 F.3d at 798 (citing 29 C.F.R. § 2560.503-1(l)) (emphasis in original).

### a.  *Procedural Irregularities*

ERISA contemplates "an ongoing, good faith exchange of information between the administrator and the claimant[.]" Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 635 (10th Cir. 2003). Pursuant to ERISA's mandate, the CFR "sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries." 29 C.F.R. § 2560.503-1(a). These minimum requirements include an "[o]bligation to establish and maintain reasonable claims procedures . . . governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations[.]" 29 C.F.R. § 2560.503-1(b).

i.    Failure to Utilize Procedural Safeguards

An employee benefit plan's "claims procedures . . . [must] contain administrative processes and safeguards designed to ensure and verify that benefit claim determinations are made in accordance with governing plan documents[.]"   29 C.F.R. § 2560.503-1(b)(5).

The administrative record shows procedural inconsistencies between UHC's management of plaintiff's insurance verification for her 2017 mastectomy procedures at Freeman, and the subsequent 2018 Mercy Hospital insurance verification for plaintiff's breast reconstruction procedures.  Specifically, before plaintiff's bilateral mastectomy, UHC sent plaintiff a confirmation of coverage for the procedures.  Dkt. # 49-1, at 177-78.  In other words, UHC had a reasonable procedural safeguard to ensure accurate verification of covered health services.

With respect to the 2018 Mercy Hospital procedures, the January 24, 2018 insurance verification note (Dkt. # 57, at 8) provides powerful circumstantial evidence that Mercy Hospital was informed by UHC that it was an in-network facility, and--critically--that no prior authorization was required because of plaintiff's previous breast cancer diagnosis.  See Dkt. # 57, at 8.  The record shows that the January 24, 2018 insurance verification note is corroborated by: 1) plaintiff's policy, which states a deductible amount, out-of-pocket maximum, and co-insurance structure that exactly matches the details written in the note, Dkt. # 49-1, at 27-29, 33-34, 37; 2) Mercy Hospital's March 28, 2018 appeal letter, which references a "precert" call with UHC during which Mercy Hospital was informed that no prior authorization was required, Dkt. # 57, at 6-7; and 3) Mercy Clinic's February 2018 (Dkt. # 49-1, at 242), and Mercy Hospital's September 2018 (Dkt. # 49-1, at 270-74) and October 2018 (Dkt. # 49-1, at 281-85, 293-302) claims, which contain the same procedure codes as the ones written in the January 24, 2018 insurance verification note, Dkt. # 57, at 8.  It is unclear

13

why UHC did not utilize a prior authorization mechanism, like the confirmation of coverage that plaintiff received before her 2017 mastectomy (Dkt. # 49-1, at 177-78), which would have served as a procedural safeguard against mistakes or miscommunications regarding Mercy Hospital's out-of-network status.  The note indicates that UHC informed Mercy Hospital that no authorization was required, Dkt. # 57, at 8, even though UHC has prior authorization procedures–e.g. sending plan beneficiaries written confirmation of coverage for specific health care services–that could have easily prevented this situation.  But for the miscommunication among Dr. Hughes's office, Mercy Hospital, and UHC (that Mercy Hospital was in-network and no prior authorization was required for plaintiff's procedures), plaintiff could have easily elected to undergo the breast reconstruction procedure at an in-network facility, such as Freeman.  Had plaintiff been made aware that Mercy Hospital was out-of-network (which should have been the case if UHC and Mercy Hospital had utilized adequate procedural safeguards to ensure plaintiff was notified that Mercy Hospital was out-of-network), she could have made an informed decision as to whether she would go forward with her procedure at an out-of-network facility or request an in-network facility.

Nevertheless, the record indicates that there was some procedural defect, miscommunication, or other error that the plan administrator reviewing claimant's appeal should have investigated, gathered evidence confirming or refuting, and explicitly addressed in its denial of appeal (Dkt. # 49-1, at 265).

ii.   Failure to Meet Minimum Standards for Manner and Content of Adverse
Benefit Determinations

Any adverse benefit determination "notification shall set forth, in a manner calculated to be understood by the claimant–(i) [t]he specific reason or reasons for the adverse determination"; "(ii) [r]eference to the specific plan provisions on which the determination is based"; and "(iii) [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary[.]" 29 C.F.R. § 2560.503-1(g)(1)(i-iii); see also Caldwell, 287 F.3d at 1288 (finding that ERISA § 1133(1) requires a claims administrator to "provide adequate notice to any participant whose claim has been denied, 'setting forth the specific reasons for such denial . . . .'").

Here, the content and manner of UHC's March 2018 (Dkt. # 49-1, at 256-59), September 2018 (Dkt. # 49-1, at 275-77), October 2018 (Dkt. # 49-1, at 286-89), and November 2018 (Dkt. # 49-1, at 303-04) notifications of adverse benefit determination fall far short of the "minimum requirements" set forth in ERISA, the accompanying CFR rules, and Tenth Circuit precedent.

Specifically, UHC's March 2018 EOB statement states, in pertinent part, "[b]ased on the information provided, this service does not meet coverage requirements as defined in your plan. Therefore, no benefits are payable for this expense." Dkt. # 49-1, at 258.  The Court finds that this notification of adverse benefit determination is impermissibly vague and non-specific.  The plan's "coverage requirements" could refer to any portion of the 175-page plan that has any relevance to eligible expenses--for example, the schedule of benefits (Dkt. # 49-1, at 25-44), the certificate of coverage (Dkt. # 49-1, at 52-121), the section on covered health services (Dkt. # 49-1, at 52-71), the section on exclusions and limitations (Dkt. # 49-1, at 72-82), the section on defined terms (Dkt. #

15

49-1, at 112-21), and so forth.  Moreover, the CFR requires UHC to reference the specific provisions of the plan that UHC relied on in making the adverse determination.  29 C.F.R. § 2560.503-1(g)(1)(ii).  Here, UHC merely states "as defined in your plan," which provides inadequate guidance to plaintiff as to which provision in the policy UHC is relying on to deny benefits.  And, UHC is required to state, in a manner calculated to be understood by claimant, what additional information or material is necessary to perfect the claim.  29 C.F.R. § 2560.503-1(g)(1)(iii).  Notwithstanding, UHC's March 2018 EOB notes state that "in order for [Mercy Hospital's claim] to be considered for coverage, [plaintiff] or [Mercy Hospital] must submit either scientific evidence, skilled care information or medical records that demonstrate how this service meets [UHC's coverage requirements]."  Id.  This boiler-plate request for information does not provide any specific indication to the claimant as to why the claim was denied, and the request for scientific evidence and medical records is vague and potentially misleading.  If UHC's denial was because Mercy Hospital is an out-of-network facility, then it is unclear why UHC requested scientific evidence, skilled care information, or medical records, as opposed to explicitly requesting documentation as to whether Mercy Hospital and/or plaintiff obtained prior authorization to use an out-of-network facility.  And, UHC failed to explain why the requested documentation is necessary, as the CFR requires, 29 C.F.R. § 2560.503-1(g)(iii), which could have served as a procedural safeguard against Mercy Hospital's misinterpretation of UHC's adverse benefit determination.  In sum, UHC's vague reason for denying benefits, that is, that the service does not meet coverage requirements; its failure to reference a specific provision in the plan; and its boiler-plate request for additional information does not provide adequate notice to plaintiff regarding the March 2018 adverse benefit determination because it does

not meet ERISA's minimum procedural standards.  See Caldwell, 287 F.3d at 1288; 29 C.F.R. §

2560.503-1(g)(1)(i-iii).

Next, UHC's September 2018 EOB statement, notifying plaintiff of its denial of Mercy

Hospital's claim states, in pertinent part, "[b]enefits for this service are denied. Based on a review

of the information provided, this service is not covered under your plan. For more details, please

refer to the letter that was sent in response to the request for notification/prior authorization."  Again,

the reason for denial is vague and non-specific.  First, UHC does not set forth a specific reason why

the service is not covered–i.e., that Mercy Hospital is an out-of-network facility.   Second, it is

unclear what provided information was reviewed in reaching the determination.  Third, UHC does

not reference a specific provision in plaintiff's plan forming the basis of the denial.  Fourth, UHC

references a letter that was sent, which purportedly contains more details, but it is unclear what letter

UHC is referencing--there is no information about the date of the letter or to whom the letter was

sent.  It is unclear whether the administrative record contains the referenced letter.  The Court notes,

however, that the record does not appear to contain a letter that makes an unambiguous, explicit

request for notification or prior authorization for the February 14, 2018 procedure.  In sum, like the

March 2018 EOB statement, UHC's September 2018 EOB statement does not provide adequate

notice to plaintiff regarding an adverse benefit determination because it does not meet ERISA's

minimum procedural standards; that is, stating with specificity the reason for denial, the specific

plan provision forming the basis of the denial, and a description of what information or material is

necessary to perfect the claim and why.

UHC's October 2018 (Dkt. # 49-1, at 286-89) and November 2018 (Dkt. # 49-1, at 303-04)

EOB statements also fall short of ERISA's procedural requirements.  Specifically, the EOB notes

17

state "[p]ayment for this service is denied. Benefits are only available when you receive services from a provider in your plan's network." Dkt. # 49-1, at 289, 304.  While this explanation is more specific than those provided in the March 2018 and September 2018 EOB statements and is the first mention of an out-of-network provider, the purported reason is still ambiguous.  For example, plaintiff's plan states "[n]etwork providers are independent practitioners.  They are not our employees[,]" Dkt. # 49-1, at 42, which implies that a provider is a person--such as a physician--not a facility.  Dr. Hughes, who performed plaintiff's surgery, is an in-network provider, while the facility, where the surgery was performed, is a non-network provider.  Accordingly, ERISA requires that UHC set forth the reason for denial in a manner calculated to be understood by plaintiff.  Thus, given the potential for confusion as to which health care services provider UHC is referring to, it is unclear why UHC did not state with specificity that benefits are denied because the facility providing services is an out-of-network facility and the claimant did not notify UHC or obtain prior authorization.  Moreover, UHC again failed to reference the specific provision in the plan that forms the basis of the decision, and did not request additional material to confirm whether there was prior authorization.

In sum, each EOB statement that UHC sent to plaintiff had procedural deficiencies impeding the development of a complete record.  ERISA's purpose is to protect plan beneficiaries, such as plaintiff, by mandating certain minimum procedural requirements for claims.  These minimum procedural requirements not only ensure that the plan administrator provides adequate notice to a claimant of an adverse determination, but they also promote the development of a complete administrative record.  For example, if UHC had communicated to plaintiff or Mercy Hospital--with specificity--that the adverse determination was due to Mercy Hospital's out-of-network status, the

claimant could have provided UHC with information substantiating notification or prior authorization, such as the January 24, 2018 insurance verification note (Dkt. # 57, at 8). Consequently, the plan administrator could have investigated and gathered evidence pertaining to this communication between UHC and Mercy Hospital, thereby developing the administrative record on a critical point of contention in this case. Moreover, a claimant is disadvantaged on appeal when an adverse determination does not set forth a specific reason or specific plan provision, particularly when, as here, the EOB notes provide little to no guidance on what the claimant should raise or address on appeal.   Thus, the Court finds that UHC's inadequate adverse benefit notifications contradict ERISA's purpose, that is, to protect plan beneficiaries, and inhibited the development of a complete administrative record.

### iii. Failure to Meet Minimum Standards for Notification of Adverse Benefit Determination on Review

For appeals of adverse benefit determinations, "[e]very employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination . . . [and] there will be a full and fair review of the claim and the adverse benefit determination."  29 C.F.R. § 2560.503-1(h)(1).  Full and fair review requires "tak[ing] into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination."  29 C.F.R. § 2560.503-1(h)(2)(iv).  Moreover, the notification of an adverse benefit determination on review "shall set forth, in a manner calculated to be understood by the claimant–(1) [t]he specific reason or reasons for the adverse determination"; "(2) [r]eference to the specific plan provisions on which the benefit determination is based"; and "(3)

[a] statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(j)(1-3).

It is apparent from Mercy Hospital's appeal letter (Dkt. # 57, at 6-7) that the provider, appealing on behalf of plaintiff, did not understand that the reason for denial was due to Mercy Hospital's out-of-network status. Namely, Mercy Hospital states in its appeal letter that "[t]he insurance indicates the denial is for lack of medical necessity for inpatient." Dkt. # 57, at 6. The letter goes on to justify why the specific procedure performed on plaintiff is necessarily inpatient, thus substantiating that Mercy Hospital misinterpreted UHC's vague adverse benefit determination notification. Further, Mercy Hospital's appeal letter references a "precert" call; that UHC told Mercy Hospital no prior authorization for the procedure was required; and it references a contractual agreement between Mercy Hospital and UHC. Id. at 6-7. A full and fair review requires that UHC take into account the information Mercy Hospital conveyed in its appeal letter. Based on the administrative record, it does not appear that UHC undertook any investigation or gathered any evidence to confirm or refute Mercy Hospital's statement that they called for precertification and UHC told it that no prior authorization was required. And, it is not apparent from the record that UHC reviewed the referenced contractual agreement with Mercy Hospital during its consideration of the appeal, and the administrative record does not appear to contain any such contract.

Moreover, the CFR requires that plan administrators write notifications of adverse benefit determinations on review in a manner calculated to be understood by the claimant. Therefore, if UHC denied the claim because of Mercy Hospital's out-of-network status--and Mercy Hospital's appeal letter unequivocally conveys that it interpreted the denial as for lack of medical necessity--

20

then UHC must necessarily clarify the reason for denial.  In other words, because UHC failed to clarify Mercy Hospital's misinterpretation, UHC per se failed to write the notification of its denial of appeal in a manner that is reasonably calculated to be understood by claimant.  Specifically, UHC's reason for denying the appeal states "[b]ased on our review, we determined that we processed this claim accurately . . . the claim was processed/paid at the contracted rate." Dkt. # 49-1, at 265.  The Court finds that this explanation is vague and inadequate.  Like the initial EOB statements, the explanation does not set forth the specific reason for the denial, that is, Mercy Hospital's out-of-network status, and it does not set forth the specific plan provision forming the basis of the determination.  Further, the explanation does not address with specificity any of the issues Mercy Hospital raised in its appeal letter (Dkt. # 57, at 6-7), such as the precertification call, that Mercy Hospital was told that no preauthorization was required, and the referenced UHC-Mercy Hospital contract.  A full and fair review requires UHC to take this information into account, but the administrative record contains no evidence that UHC considered this information, and UHC's notification of its denial of appeal (Dkt. # 49-1, at 256) does not explicitly address the information provided by Mercy Hospital either.  Therefore, the Court finds that UHC failed to meet ERISA's standards as to 1) full and fair review, and 2) the manner and content of adverse benefit notifications on review.  UHC's failures deprived plaintiff of ERISA's protections and resulted in an incomplete record.

> b.      *Missing Documents*

The Tenth Circuit has found that federal court review of an incomplete record does not serve ERISA's purpose.  Messick, 640 F. App'x at 799.  Moreover, the Tenth Circuit has reversed and remanded benefit determinations in circumstances where the plan administrator's procedural defects,

21

failure to investigate and make adequate findings, or one-sided consideration of evidence left a reviewing court "unable to determine the substantiality of the evidence supporting" the plan administrator's decision. Rekstad, 451 F.3d at 1121; see also Gaither, 394 F.3d at 806 n.5. The Court finds that the record in this case is incomplete because the administrative record (Dkt. # 49-1) and supplemental administrative record (Dkt. # 57) indicate omissions, inconsistencies, and UHC's failure to investigate and make adequate findings.

       i.     Call Logs

Certain evidence corroborates Mercy Hospital's January 24, 2018 insurance verification call with UHC. Aside from the insurance verification note (Dkt. # 57, at 8), Mercy Hospital stated in its March 28, 2018 appeal letter that it called UHC for precertification. Dkt. # 57, at 7. Thus, UHC was on notice that Mercy Hospital allegedly contacted it for prior authorization for plaintiff's February 14, 2018 procedure. An adequate review and a complete record would contain evidence that the plan administrator verified whether this call took place, and whether Mercy Hospital was informed that it was in-network and that no prior authorization was required. As it stands, 1) the insurance verification note (Dkt. # 57, at 8); 2) the Mercy Hospital appeal letter (Dkt. # 57, at 6-7); 3) plaintiff's specific policy details–i.e., her deductible, out-of-pocket maximum, and co-insurance structure--written on the insurance verification note (compare Dkt. # 49-1, at 27-29, 33, with Dkt. # 57, at 8); and 4) the identical procedure codes on the January 24, 2018 insurance verification note (Dkt. # 57, at 8), Mercy Clinic's claim for Dr. Hughes's services (Dkt. # 49-1, at 245-48), and Mercy Hospital's claims on September 19, 2018 (Dkt. # 49-1, at 271), October 3, 2018 (Dkt. # 49-1, at 282), and October 19, 2018 (Dkt. # 49-1, at 294) provide powerful circumstantial evidence that Mercy Hospital verified plaintiff's coverage and notified UHC of plaintiff's procedure on January

24, 2018, weeks before her surgery. Thus, UHC's review, and the accompanying administrative record, must include some form of investigation and evidence gathering--including call logs and any accompanying notes, if such logs are kept--that either confirms or refutes the January 24, 2018 insurance verification call between Mercy Hospital and UHC.

ii.     Mercy-UHC Contract

The existing record also indicates that Mercy Hospital has a contract with UHC. Specifically, the March 28, 2018 appeal letter stated that Mercy Hospital's "agreement with UHC is that if there is a disagreement over the status [of a procedure], that UHC will contact [Mercy Hospital]." Dkt. # 57, at 6. Moreover, UHC's April 20, 2018 response letter denying Mercy Hospital's appeal stated that "[n]o further payment is due because the claim was processed/paid at the contracted rate." Dkt. # 49-1, at 265. Additionally, UHC's ORS log regarding Mercy Hospital's April 2020 reconsideration request states that "[a]ccording to your contract, reconsideration requests/appeals must be submitted within the timely filing limit." Dkt. # 57, at 10. Taken together, there are several references to a contract, and an adequate review and complete record would include a copy of any relevant Mercy Hospital-UHC contracts; evidence that the plan administrator reviewed such contracts; and evidence of a specific contractual provision forming the basis for UHC paying $0 for Mercy Hospital's billed amount.

iii.     Online Routing System History

Based on Freeman's 2017 appeal (Dkt. # 49-1, at 235-36) and Mercy Hospital's 2020 appeal (Dkt. # 57, at 10), UHC utilizes claim management and tracking software --the ORS. The record and agreed supplemental record include ORS history for the 2017 and 2020 appeals; however, the record does not contain the ORS history for Mercy Hospital's March 2018 appeal. The 2017 and

23

2020 ORS documents confirm that the ORS history could contain critical information, such as the provider's network status, date-stamped notes from UHC administrators reviewing the claim, reasons for a particular course of action, and so forth.  An adequate review and a complete record would contain the entire ORS history relevant to plaintiff's Mercy Hospital procedures, and, at minimum, the entire ORS history of the March 28, 2018 appeal.

            iv.      Provider Remittance Advice

Documents in the administrative record confirm that UHC sends service providers PRA statements.  For example, when Freeman submitted claims for plaintiff's 2017 procedures, UHC sent Freeman PRA statements indicating the amount UHC paid, and notes as to contractual obligations and why certain adjustments were made.  See Dkt. # 49-1, at 205-14.  Thus, it is unclear why UHC did not include any PRA statements regarding the Mercy Hospital claims in the administrative record.  PRA statements could contain pertinent information concerning what UHC stated to Mercy Hospital as to the adverse benefit determination, any contractual agreements, what information was needed to perfect the claim, and so forth.  UHC paid Mercy Clinic's February 20, 2018 claim (Dkt. # 49-1, at 240-43) for Dr. Hughes's services, Dkt. # 49-1, at 247; thus, there should exist, at the very least, a PRA statement for that payment.  An adequate review and complete record would contain evidence that the plan administrator reviewed the relevant PRA statements during the appeals process as part of its investigation and evidence gathering.

v.        Reimbursement Policy Guidelines

In its March 8, 2018 EOB statement (Dkt. # 49-1, at 256-58), which gave rise to Mercy Hospital's March 28, 2018 appeal letter (Dkt. # 57, at 6-7), UHC states that the "service does not meet coverage requirements as defined in your plan."  Dkt. # 49-1, at 258.  According to the plan's terms, "[e]ligible [e]xpenses are determined solely in accordance with [UHC's] reimbursement policy guidelines, as described in the *Certificate* [of Coverage]." Id. at 41.  In the Certificate of Coverage, the plan states that UHC "develop[s] [its] reimbursement policy guidelines, as [it] determine[s], in accordance with one or more of the following methodologies:" 1) "[a]s indicated in the most recent edition of the *Current Procedural Terminology* . . . and/or *Centers for Medicare and Medicaid Services*"; 2) "[a]s reported by generally recognized professionals or publications"; 3) "[a]s used for Medicare"; and 4) "[a]s determined by medical staff and outside medical consultants pursuant to other appropriate sources or determinations that we accept." Id. at 49-50. Further, "non-Network providers . . . may bill [beneficiaries] for . . . amounts that are denied because one of [UHC's] reimbursement policies does not reimburse (in whole or in part) for the service billed." Id. at 50.  Notwithstanding, the Certificate of Coverage does not explicitly describe the reimbursement policy guidelines that UHC relies on in making benefit determinations.  In other words, the plan does not put plaintiff on notice as to what reimbursement policy guidelines were applied in making her adverse benefit determination.  However, if the plan administrator relied on specific reimbursement policy guidelines as to plaintiff's February 14, 2018 procedures, then an adequate review and complete record would include a copy of the reimbursement policy guidelines document and reference to the specific provision(s) of the guidelines that the plan administrator relied on.

In sum, the Court finds that the administrative record is missing critical evidence, without which the Court is unable to evaluate the substantiality of the evidence relied on by the plan administrator in denying benefits for plaintiff's Mercy Hospital claim.  A complete record would include: 1) evidence confirming or refuting the January 24, 2018 insurance verification call, preferably with call logs; 2) any contractual agreements between Mercy Hospital Springfield and UHC that were in effect between January 2018 and April 2020; 3) every ORS record related to plaintiff's February 14, 2018 procedure; 4) every PRA statement that UHC sent to Mercy Hospital and/or Clinic  related to plaintiff's February 14, 2018 procedure; 5) the full text of the reimbursement policy guidelines UHC relied on for each adverse benefit determination as to plaintiff's February 14, 2018 procedure, including, for the March 2018, September 2018, October 2018, November 2018, and April 2020 adverse determinations.

## IV.

The Court finds that this case should be remanded to UHC.  The Tenth Circuit has given district courts the following guidance in deciding whether to remand a case to the plan administrator for a review of plaintiff's case: "if the plan administrator 'fail[ed] to make adequate findings or to explain adequately the grounds of [its] decision,' the proper remedy 'is to remand the case to the administrator for further findings or explanation[.]'" DeGrado v. Jefferson Pilot Fin. Ins. Co., 451 F.3d 1161, 1175-76 (10th Cir. 2006) (alterations in original) (citations omitted).  Here, as discussed in Part III, supra, UHC failed to adequately explain the grounds for its decision and failed to make adequate findings to substantiate its determination.  Thus, the proper remedy is to remand plaintiff's case to UHC for further findings and explanations in line with this opinion and order and ERISA's explicit minimum standards, See, e.g.,  29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(g-h).  UHC is

advised that, even if a deferential standard applies, an adverse benefits determination that does not account for and adequately refute the powerful circumstantial evidence with respect to the January 24, 2018 insurance verification note would be arbitrary and capricious. UHC is further advised that where the plan administrator fails to meet minimum ERISA standards for claims procedures, plaintiff's administrative remedies shall be deemed to have been exhausted, e.g., with respect to timeliness of appeals, Dkt. # 49-1, at 314.

It is unclear where the fault lies as to the apparent miscommunication between Mercy Hospital and UHC, but it is abundantly clear that the miscommunication did not involve plaintiff Edith Evans. Notwithstanding, the impact of this miscommunication on plaintiff has been significant. First, plaintiff was denied the opportunity to make an informed choice as to whether she wanted to go forward with her breast reconstruction surgery at an out-of-network facility, or elect to have her procedure at an in-network facility. Second, rather than clarify its agreement with UHC and demand payment from UHC,[6] Mercy Hospital has been attempting to collect payment from plaintiff, for approximately $50,000 in hospital bills, through a debt collection agency, Dkt. # 61, at 6. However, from the current record, it appears that the benefits denial (and resulting unpaid Mercy Hospital bill) was due to an apparent miscommunication--that did not involve plaintiff-- between Mercy Hospital and UHC.

---

[6] The Court is perplexed as to why UHC paid nothing at all on the Mercy Hospital claim, unless there is a UHC-Mercy Hospital contract that specifically provides that no payment is due in such circumstances.

**V.**

Finally, plaintiff moves, pursuant to Fed. R. Civ. P. 12, to dismiss, strike, or for a more definite statement as to UHC's counterclaim (Dkt. # 37, at 9) "to recover its reasonable and necessary attorneys' fees" under 29 U.S.C. § 1132(g). Dkt. # 40, at 1-2. Section 1132(g) states, in pertinent part, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). However, The Supreme Court has held that "a fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1)." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 255 (2010). Given that the Court is remanding plaintiff's claims to UHC for further findings and explanations consistent with this opinion and order, the Court finds that defendant has not met its burden to show some success on the merits of plaintiff's ERISA claim. See id. Therefore, any award of fees at this time is premature, and plaintiff's motion to dismiss, strike, or clarify defendant's counterclaim (Dkt. # 40) is moot.

**IT IS THEREFORE ORDERED** that defendant UHC's decision to deny plaintiff benefits for Mercy Hospital's claims for hospital services is **remanded** for further findings or explanations consistent with this opinion and order. A separate judgment closing this case is entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's motion to dismiss, strike, or clarify defendant's counterclaim (Dkt. # 40) is **moot**.

**DATED** this 2nd day of February, 2022.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE